Gregory A. BAKER, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 680S169.

Supreme Court of Indiana.

Sept. 1, 1981.

Richard M. Salb, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Frederick N. Kopec, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Gregory A. Baker, was convicted by a jury of theft, a class D felony, Ind.Code § 35–43–4–2 (Burns 1979 Repl.) and of being an habitual offender, Ind.Code § 35–50–2–8 (Burns 1979 Repl.) and was sentenced to consecutive terms of two and thirty years' imprisonment. His direct appeal raises the following issues all related to the habitual offender phase of the proceedings:

1. Whether the trial court erred in allowing the prosecutor to file the habitual offender count using the same two prior felonies which had been used during the habitual offender proceeding at a previous trial;

2. Whether the court erred in granting the state's motion in limine which prevented defendant from making any reference to a prior jury decision involving the same two prior felonies used by the state in this habitual offender count;

3. Whether the habitual offender sentence constitutes multiple punishment for the same "offense" since the sentence on his last felony conviction was increased because of the existence of the same prior felony convictions;

4. Whether defendant's prior conviction for shoplifting, alleged to be a felony conviction, was actually a misdemeanor conviction and was improperly admitted into evidence; and

5. Whether the prosecutor's conduct in filing the habitual offender count was an act of prosecutorial vindictiveness.

A summary of the facts from the record shows that the theft charge arose from defendant's unauthorized use of another person's American Express Card. The information which charged defendant with this theft was filed on June 15, 1978. The state filed the amended information adding

the habitual offender count on November 21, 1979. The trial on these counts was held on November 26, 1979, with guilty verdicts returned by the jury on both counts.

The record also shows that defendant was tried and convicted on an unrelated theft charge one week prior to the instant trial on November 19, 1979. At that trial, there was an habitual offender count based upon the same two prior felony convictions which were used at the instant trial. On November 19, 1979, the jury found defendant guilty on the theft charge but returned a verdict of not guilty on the habitual offender count.

### I.

Defendant first argues that the constitutional prohibition against double jeopardy and the related doctrine of collateral estoppel bar the state from reusing prior felony convictions in support of an habitual offender charge where a prior habitual offender proceeding, based on the same prior felony convictions, had resulted in a verdict of acquittal.

This Court has not considered this precise issue but has considered the doctrine of collateral estoppel as it applies to habitual offender proceedings in *Hall v. State*, (1980) Ind., 405 N.E.2d 530. In that case, the defendant was found guilty of rape in 1977, but the habitual offender count against him was dismissed by the court on the basis that the state's exhibits were not sufficient to show a knowing and voluntary plea of guilty at his two prior felony convictions. At a subsequent trial on a charge of murder, the same two prior felony convictions were presented to the jury as were used in the 1977 rape conviction. A third prior felony was also presented at that time. The defendant was then found guilty of involuntary manslaughter and was found to be an habitual offender. He argued that the doctrine of collateral estoppel prevented the state from using the same two prior felonies at the murder trial that had been used at his previous rape trial. We unanimously held that the doctrine of collateral estoppel did not apply in his case where the

previous habitual offender count had been dismissed. We now find that the doctrine of collateral estoppel similarly does not apply to the instant case where the previous habitual offender proceeding resulted in a not guilty verdict.

This Court has consistently emphasized the unique status of the habitual offender statute. This statute has historically provided for greater punishment than would ordinarily be imposed upon the substantive crime charged. The individual is subjected to the greater sentence neither for the prior crimes nor for the status of habitual offender, but rather the enhanced sentence is imposed for the last crime committed. *Comstock v. State*, (1980) Ind., 406 N.E.2d 1164; *Wise v. State*, (1980) Ind., 400 N.E.2d 114. The purpose of the statute is to more severely penalize those persons whom prior sanctions have failed to deter from committing felonies. *Hall v. State, supra; Norris v. State*, (1979) Ind., 394 N.E.2d 144; *Parks v. State*, (1979) Ind., 389 N.E.2d 286. It is widely recognized that since habitual criminality is a vehicle for the enhancement of punishment upon the conviction of an additional, substantive crime, prior convictions used to establish the fact of habitual criminality at one trial can be used again after a subsequent felony conviction. This is based upon the reasoning that the use of the prior convictions is for a determination of status only and the additional punishment is imposed for each *new* crime not for crimes for which the defendant has already been convicted and punished. *Hall v. State, supra; People v. Anderson*, (1979) Colo.App., 605 P.2d 60; *State v. Rogers*, (1979) 93 N.M. 519, 602 P.2d 616; *Pearson v. State*, (1975) Tenn., 521 S.W.2d 225.

■ It is well settled that both this Court and the United States Supreme Court have upheld recidivist statutes against cruel and unusual punishment, double jeopardy, *ex post facto*, and due process arguments. *Rummel v. Estelle*, (1980) 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382; *Spencer v. Texas*, (1967) 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606; *Hall v. State, supra*. The doctrine of collateral estoppel is embodied

in the constitutional guaranty against double jeopardy. This doctrine provides that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Ashe v. Swenson*, (1970) 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469; *Town of Flora v. Indiana Service Corp.*, (1944) 222 Ind. 253, 53 N.E.2d 161. However, the finding that a defendant is or is not an habitual offender is not an "ultimate issue of fact" in the sense discussed in *Ashe*. Only the fact of the various convictions, and not the facts underlying those offenses, is determinative of a defendant's habitual offender status.

The existence of a felony conviction begins at the instant a court issues a final judgment of conviction in that particular case. The action of a court at a later habitual offender hearing does not operate to "acquit" the defendant of that prior conviction or change the fact that the prior conviction does still exist. The action of the subsequent court involves only the enhanced penalty to be imposed upon a defendant after he has been convicted of a subsequent crime. Our statute provides that each time a defendant with two prior felony convictions is convicted of another felony, the state is allowed to then charge him with being an habitual offender. The statute further provides that there must be a determination of defendant's status as an habitual offender based upon the evidence presented at that time. Ind.Code § 35–50–2–8 (Burns 1979 Repl.). Even if there is a determination made in one case that a defendant is not an habitual offender based upon the evidence presented at that time, there is nothing to prevent the state from alleging the fact of the prior felony convictions again at a later trial since those two prior convictions do still exist. *Hall v. State, supra*. The repeated use of prior convictions as a determinant of status does not constitute double jeopardy and thus does not invoke the doctrine of collateral estoppel.

The recent United States Supreme Court case of *Bullington v. Missouri*, (1981) —— U.S. ——, 101 S.Ct. 1852, 68 L.Ed.2d 270, is not applicable since it involved a bifurcated death-penalty procedure wherein the jury returned a verdict fixing the punishment at life imprisonment and not at death. The defendant was granted a new trial on the substantive charge. The Supreme Court held that the state could not ask for the death penalty a second time since the sentencing procedure at the defendant's first trial was like the trial on the question of guilt or innocence and involved a consideration of the particular facts underlying the substantive offense. *Bullington v. Missouri, supra.*

Because the habitual offender statute does not create new or separate offenses and the habitual offender proceeding does not deal with the underlying facts on the substantive charge, the use of prior convictions at more than one habitual offender proceeding does not constitute double jeopardy. Our legislature has decided that an enhanced punishment of thirty additional years is appropriate for all individuals who are convicted of a felony when it is determined that they also have two prior felony convictions. There are no constitutional or collateral estoppel barriers to prevent the state from exacting that punishment each time a different felony is committed as long as the prior convictions do still exist. There was no error here.

## II.

Defendant next argues that the trial court erred in granting the state's motion in limine preventing him from making any reference to the jury about his prior habitual offender proceeding. However, we find that defendant has misconstrued the purpose of a motion in limine.

It is well settled that motions in limine are used before trial as protective orders against prejudicial questions and statements which might arise during trial. However, the purpose of the motion is not to obtain a final ruling upon the ultimate admissibility of evidence, but it is rather to prevent the proponent of potentially prejudicial matter from presenting it to the jury

*until* the trial court has ruled upon its admissibility in the context of the trial itself. *Crosson v. State,* (1978) 268 Ind. 511, 376 N.E.2d 1136; *Lagenour v. State,* (1978) 268 Ind. 441, 376 N.E.2d 475.

■ Defendant was not prevented by the motion in limine from making any reference to his prior habitual offender proceeding, but he was required to seek and obtain the court's permission outside the presence of the jury before bringing in such evidence. There is nothing in the record to show that defendant ever made such a request to the court. He thus presents no error on this issue.

### III.

■ Defendant next contends that the use of his prior convictions as the basis for the habitual offender count exposed him to double sentencing since these same two prior convictions were considered as aggravating circumstances to enhance the basic penalty on a theft conviction at a previous, unrelated trial. There is no merit to this contention. As we stated above, this Court has consistently held that a sentence imposed under the habitual offender statute is not a sentence for a separate crime but is rather an additional penalty for the crime charged. *Comstock v. State, supra; Wise v. State, supra.* Thus, the use of prior felony convictions as aggravating circumstances at a previous, unrelated trial has no effect on their use as a determinant of defendant's status as an habitual offender at the instant trial. The harsher punishment mandated by the habitual offender statute has been determined to be appropriate by our legislature and we have found that the statute is within the bounds of constitutional limits. *Comstock v. State, supra; Hall v. State, supra.*

### IV.

■ The defendant's next assignment of error is that the state was allowed to present evidence of a third prior felony conviction during the habitual offender proceeding. He argues that this third prior conviction was for shoplifting which was only a misdemeanor. Defendant bases his argument on the fact that he pled guilty to the shoplifting charge in 1974, in the Marion County Municipal Court and was sentenced to thirty days in the Marion County jail.

It is clear that prior to the 1977 penal code felonies were defined by statute in the following manner:

"All crimes and public offenses which may be punished with death or imprisonment in the state prison shall be denominated felonies; all [and] all other offenses against the criminal law shall be denominated misdemeanors." Ind.Code § 35–1–1–1 (Burns 1975).

The statute applicable to shoplifting in 1974 was the general theft statute Ind.Code § 35–17–5–3 (Burns 1975), and the possible penalties included imprisonment in the state prison not less than one year and not more than five years, Ind.Code § 35–17–5–12 (Burns 1975). Since the possible punishment for this crime could be imprisonment in the state prison, the state has correctly characterized this offense as a felony. *See, Young v. State,* (1970) 254 Ind. 379, 260 N.E.2d 572; *Paneitz v. State,* (1965) 246 Ind. 418, 204 N.E.2d 350.

■ Furthermore, there was no error in introducing evidence of this third prior conviction during the habitual offender proceeding since we have consistently held that a third conviction is mere surplusage and harmless to the defendant under the requirements of the habitual offender statute. *Hall v. State, supra; Jessup v. State,* (1971) 256 Ind. 409, 269 N.E.2d 374.

### V.

■ Defendant finally contends that the action of the prosecutor in amending the original information to include the habitual offender count was an act of prosecutorial vindictiveness. He claims that the prosecutor filed this charge only after defendant insisted on pleading not guilty to the theft charge, in an attempt to coerce defendant into foregoing his right to a trial.

This Court has clearly held that where the habitual criminal count charged a defendant with an offense for which he was properly subject to prosecution before the failure of the plea negotiations, the filing of the habitual offender count after a breakdown of the plea negotiations is a justifiable exploitation of legitimate bargaining leverage. *Norris v. State,* (1979) Ind., 394 N.E.2d 144; *McMahan v. State,* (1978) 269 Ind. 566, 382 N.E.2d 154. The action of the prosecutor in the instant case was based upon defendant's prior convictions which existed at the time the theft charge was filed. Defendant surely was aware that the convictions existed and that this charge might be brought. The filing of the habitual criminal count did not constitute prosecutorial vindictiveness.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and PIVARNIK, J., concur.

PRENTICE, J., dissents with opinion in which DeBRULER, J., concurs.

PRENTICE, Justice, dissenting.

I dissent from the majority opinion with respect to Issue I which misapplies *Hall v. State,* (1980) Ind., 405 N.E.2d 530, violates the doctrine of collateral estoppel, which is well rooted in the case law of this state and distinguishes the very recent case of *Bullington v. Missouri,* (1981) —— U.S. ——, 101 S.Ct. 1852, 68 L.Ed.2d 270 upon the basis of nonsubstantive factual differences. The majority emphasized the "unique status" of the habitual offender statute, and in so doing lost sight of a fundamental aspect of due process of law.

The majority, in the main, relies upon *Hall v. State, supra,* but in that case there had been no basis for application of collateral estoppel, as there had been no prior judicial determination of Hall's status with respect to the prior crimes charged. Likewise, the doctrine is inapplicable when the prior judicial determination was against the defendant. In the case before us, however, the State has been permitted to relitigate two issues determinative of Defendant's liberty for a period of thirty years, when those same issues have been previously litigated between the parties and determined in Defendant's favor. It justifies its position by saying that the prior convictions do exist, but that is not the point. The point is that there had been a judicial determination between the parties that they do not exist. It *is the finding and not the fact itself that controls.* Under this holding of the majority, a defendant who, in fact, is not the same person who was previously convicted and sentenced may be charged and re-charged ad infinitum, until the fact finder ultimately errs and brings forth a finding to the State's liking.

The information, which charged the defendant with theft, was filed on June 15, 1978. On November 19, 1979, while such charge was pending, he was convicted of another felony but acquitted upon a companion count of habitual criminality. On November 21, 1979, the State filed an amended information adding to the theft charge an habitual offender charge. The State there alleged three (3) prior felony convictions: one of January 25, 1966, one of September 20, 1968 and one of April 23, 1974.[1]

On November 26, 1979, Defendant moved to dismiss the habitual offender count upon the grounds that two of the three prior convictions charged had been previously uti-

1. In the case at bar, the prosecutor waited seventeen (17) months after the filing of the Information and only two (2) days after the November 19, 1979 acquittal to add the habitual offender count. The obvious motive in adding the habitual offender count was to avenge the defendant's success in the first habitual offender proceeding. If the Prosecutor is not permitted to use his charging powers to penalize a defendant who prevails on a motion to correct errors, *See Cherry v. State,* (1981) Ind., 414 N.E.2d 301, 306, I do not believe that he may use those same powers to penalize a defendant who prevails before a jury on the exact same issue.

lized as the basis for a prior charge of habitual offender status upon which he had been acquitted. On that same date, the State filed a motion in limine to prevent the defendant from referring to the aforementioned prior acquittal and a response to the defendant's motion to dismiss.

On November 26, 1979, just prior to trial on the habitual offender charge, the defendant renewed his prior objections in response to the State's proffer of exhibits, which documented the defendant's prior convictions. The objections were overruled, and the State's motion in limine was granted.

The defendant contends that the principle of collateral estoppel, as part of the constitutional prohibition against double jeopardy, bars the State from reusing prior felony convictions in support of an habitual offender charge, where a prior habitual offender proceeding, based upon the same prior felony convictions, had resulted in a verdict of acquittal.

Collateral estoppel is a branch of the doctrine of res judicata. In Indiana the principles of res judicata were held to apply to criminal cases before the United States Supreme Court recognized collateral estoppel as an aspect of the Fifth Amendment prohibition against Double Jeopardy in *Ashe v. Swenson*, (1969) 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469. *Gasaway v. State*, (1967) 249 Ind. 241, 243, 231 N.E.2d 513, 514; *Etheridge v. State*, (1960) 240 Ind. 384, 387, 164 N.E.2d 642, 644.

In *Town of Flora v. Indiana Service Corp.*, (1944) 222 Ind. 253, 257, 53 N.E.2d 161, 163, we referred to the principle of collateral estoppel as "estoppel by verdict or finding" and stated the requirements for its invocation:

"The other branch of the subject (res judicata) applies where the causes of action are not the same, but where some fact or question has been determined and adjudicated in the former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties. In such cases the former adjudication of the fact or question, if properly presented and relied on, will be held conclusive on the parties in the latter suit, regardless of the identity of the causes of action, or the lack of it, in the two suits. When the second action, between the same parties is on a different cause of action, claim, or demand, it is well settled that the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined, and not as to other matters which might have been litigated and determined in the original action."

The record before us presents a situation to which the principle of collateral estoppel clearly applies.[2]

Within the context of the habitual offender proceeding, the ultimate issue of fact is whether the defendant is an habitual offender based upon the alleged prior felony convictions, and the jury makes the determination of such issue. *Wise v. State*, (1980) Ind., 400 N.E.2d 114, 118; Ind.Code § 35–50–2–8(d) (Burns 1979). Thus, at least two issues of fact were conclusively determined by the judgment rendered on November 19, 1979—that the defendant was guilty of the offense charged and that he was not an habitual offender, based upon the 1968 and 1974 convictions.

The two criminal proceedings related to the defendant's collateral estoppel claim involved unrelated charges of theft. In the first case the jury was charged with the responsibility of determining whether or not the allegations of prior convictions in 1968 and 1974 were proved beyond a reasonable doubt by the evidence, so as to support a finding that the defendant was an habitual offender within the meaning of Ind.Code § 35–50–2–8. Ind.Code § 35–50–2–8(d) (Burns 1979). The jury returned a verdict of acquittal. The majority chooses to ignore the legal ramifications of this verdict by reasoning as follows:

**2.** The mutuality of estoppel requirement in civil cases, *State v. Speidel*, (1979) Ind.App., 392 N.E.2d 1172, 1175–76 (cases cited therein), does not apply to criminal cases. *Simpson v. Florida*, (1971) 403 U.S. 384, 386, 91 S.Ct. 1801, 1803, 29 L.Ed.2d 549, 552 (per curiam).

"However, the finding that a defendant is or is not an habitual offender is not an 'ultimate issue of fact' in the sense discussed in *Ashe*. Only the fact of the various convictions, and not the facts underlying those offenses, is determinative of a defendant's habitual offender status. "The existence of a felony conviction begins at the instant a court issues a final judgment of conviction in that particular case. The action of a court at a later habitual offender hearing does not operate to 'acquit' the defendant of that prior conviction or change the fact that the prior conviction does still exist."

While I agree that a defendant may not collaterally attack the validity of the alleged prior felony convictions, the matter does not end there. Records of convictions and sentences may exist; however, it is incumbent upon the State to prove them, beyond a reasonable doubt, when it charges one with habitual offender status. *Miller v. State*, (1981) Ind., 417 N.E.2d 339, 342; Ind. Code § 35–50–2–8(d) (Burns 1979). The State failed in its task in the November 19, 1979 trial, and the defendant was acquitted.

One week after a jury had determined that the defendant had not been convicted and sentenced in the aforementioned 1968 and 1974 proceedings, the State was permitted to allege again that he had been so convicted and sentenced and to thus subject the defendant to an enhanced sentence, as an habitual offender. The State was thus given a second opportunity on November 26, 1979 to prove two ultimate facts which it had failed to prove and which had been found against it one week earlier.

To allow the State to use those same two convictions a subsequent time, following a negative finding, to support a finding of habitual offender status would permit the State to refine the evidence of those convictions, to relitigate the issue before a different jury, and to obtain a guilty verdict thereon. Collateral estoppel operates to prevent the opportunity for just such refinement of the evidence. *Ashe v. Swenson*, (1969) 397 U.S. 436, 447, 90 S.Ct. 1189, 1196, 25 L.Ed.2d 469, 477. This record shows facts which merit the application of collateral estoppel to the second habitual offender proceeding, *Town of Flora v. Indiana Service Corp., supra*, and the trial court should have granted the defendant's motion to dismiss the habitual offender count of the information.

The majority avoids this result through the platitude that the habitual offender statute is "unique" (and therefore, perhaps above Due Process) and the contrived fiction that the jury's verdict in an habitual offender proceeding does not determine an ultimate issue of fact. This holding is contrary to logic, and the opposite result has been implicitly recognized by other jurisdictions.

In *State v. Johnson*, (1972) Mo., 485 S.W.2d 106, the defendant was tried in 1953 for rape and for being an habitual criminal based upon four alleged prior felony convictions in a non-bifurcated proceeding. The jury convicted him of rape, but made no finding on the habitual criminal charge. The Supreme Court of Missouri reversed the conviction and remanded the case for a new trial. In 1954 the defendant was retried and convicted of rape and found to be an habitual criminal, based upon the same four prior convictions, which had been alleged at the first trial. In a belated appeal from that determination, the defendant contended that the jury's silence on the habitual criminal issue at the first trial amounted to a finding that he was not an habitual criminal and precluded his subsequent trial as an habitual criminal, relying upon *Ashe v. Swenson, supra*. The Court responded:

"Collateral estoppel involves the determination of an issue of ultimate fact by a valid and final judgment. *Ashe v. Swenson, supra*. There was no final judgment in the first trial as to the two prior convictions withdrawn and not submitted to the jury. Therefore, the doctrine of collateral estoppel would not have precluded their use on the second trial. Assuming the applicability of the doctrine as to the two which were resubmitted, their use here was harmless error in view of the

failure of the jury to impose the maximum penalty of life imprisonment called for by the finding of prior convictions." *Id.,* 485 S.W.2d at 112.

Based upon the record before it, the Supreme Court of Missouri did not have to reach the precise question that we must decide; however, the Court's language implicitly recognizes that collateral estoppel can apply to jury findings made in habitual criminal proceedings.

In *State v. Hill,* (1976) La., 340 So.2d 309, the defendant was found guilty of the possession of heroin. In a hearing on an information charging the defendant with being a multiple offender based on four alleged prior felony convictions, the trial court found the defendant not guilty, as a multiple offender, because the documentation of the prior convictions was not properly authenticated under Louisiana case law. Within a month, the State filed an identical information charging the defendant with being a multiple offender based upon the same four prior convictions. The trial court granted the defendant's motion to quash the information. The Supreme Court reversed but said:

"We do not mean to suggest that there can be no ruling of any character on the trial of a multiple offender bill which is entitled to finality in the res judicata sense, such for instance, as a ruling that 'more than five years have elapsed since expiration of the maximum sentence or sentences, of the previous conviction, or convictions, and the time of the commission of the last felony for which he had been convicted.' R.S. 15:529.1(C). (See Ind.Code 35–50–2–8(e) (Burns Supp. 1980)). Then, too, there might arise a case in which there is put at issue, and seriously contested, whether the defendant is in fact the identical person whose convictions properly proven, are described in a multiple bill, and in a re-multiple bill.
"A court determination, favorable to a defendant that a given earlier offense was legally stale or that described convictions were suffered by a person other than defendant, just might as a matter of

law be entitled to finality and be the proper subject of res judicata. We need not, however, answer that question in this case." *Id.* at 312.

The question presented by the record in *Hill* is analogous to the issue that this Court faced in *Hall v. State, supra,* which the State argues and the majority holds is dispositive of the defendant's contention. In *Hall* in the first habitual offender proceeding, the trial court found, as a matter of law, rightly or wrongly, that the defendant's alleged prior convictions could not support an habitual offender finding, because the State's exhibits did not show a knowing and voluntary plea of guilty on each alleged prior conviction. The ruling of the trial court did not determine the ultimate issue of fact, i. e., whether or not the defendant was an habitual offender based upon the alleged prior felony convictions. In sharp contrast, a jury verdict does determine that ultimate issue of fact. *See* Ind. Code § 35–50–2–8(d) (Burns 1979).

Finally, I am persuaded that *Bullington v. Missouri, supra,* is dispositive of this case. In *Bullington* the defendant was convicted of Capital Murder. Under Missouri law he was subjected to a penalty phase of the proceedings, in which the same jury that found him guilty of the homicide determined the penalty. The jury's choices were life imprisonment without parole or probation for fifty (50) years or death. The jury could impose the death penalty only if it found unanimously and beyond a reasonable doubt that any of the statutorily enumerated aggravating circumstances that it found to exist were sufficient to warrant the imposition of the death penalty. The jury fixed Bullington's punishment at life imprisonment. He succeeded in obtaining a new trial, and the state informed him pursuant to Missouri law that it intended to seek the death penalty on retrial.

Bullington argued that the Double Jeopardy Clause of the Fifth Amendment barred the state from seeking the death penalty a second time. The Supreme Court agreed and held that *United States v. DiFrancesco,* (1980) 449 U.S. 117, 101 S.Ct.

426, 66 L.Ed.2d 328; *Chaffin v. Stynchcombe*, (1973) 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714; *North Carolina v. Pearce*, (1969) 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656; and *Stroud v. United States*, (1919) 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed.2d 103, which allow for the possibility of a harsher sentence at retrial after a defendant succeeds in having his original conviction set aside, were factually distinguishable:

> "The procedure that resulted in the imposition of the sentence of life imprisonment upon petitioner Bullington at his first trial, however, differs significantly from those employed in any of the Court's cases where the Double Jeopardy Clause has been held inapplicable to sentencing. The jury in this case was not given unbounded discretion to select an appropriate punishment from a wide range authorized by statute. Rather, a separate hearing was required and was held, and the jury was presented both a choice between two alternatives and standards to guide the making of that choice. Nor did the prosecution simply recommend what it felt to be an appropriate punishment. It undertook the burden of establishing certain facts beyond a reasonable doubt in its quest to obtain the harsher of the two alternative verdicts. The presentence hearing resembled and, indeed, in all relevant respects was like the immediately preceding trial on the issue of guilt or innocence. It was itself a trial on the issue of punishment so precisely defined by the Missouri statutes." (Footnote omitted).

—— U.S. at ——, 101 S.Ct. at 1858, 68 L.Ed.2d at 278–79.

The procedure employed by Missouri for determining the penalty persuaded the Court to apply its holding in *Burks v. United States*, (1978) 437 U.S. 1, 18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1, 14, which prohibits retrial after the defendant obtains a reversal of his conviction on the grounds of insufficient evidence.[3]

> "By enacting a capital sentencing procedure that resembles and is like a trial on the issue of guilt or innocence, however, Missouri explicitly requires the jury to determine whether the prosecution has 'proved its case.'"

—— U.S. at ——, 101 S.Ct. at 1861, 68 L.Ed.2d at 282.

The Supreme Court agreed with a dissenting justice of the Missouri Supreme Court that the jury had already acquitted the defendant of whatever was necessary to impose the death sentence. That the State would introduce no new evidence in the penalty phase of the retrial did not change the result.

The Indiana Habitual Offender scheme is similar to Missouri's procedure for determining the imposition of capital punishment. Both require that the jury, in a bifurcated proceeding, unanimously determine, beyond a reasonable doubt, whether or not the defendant occupies a status warranting an enhanced sentence. In each instance the State bears the burden of proving that status, through competent evidence, and the enhanced penalty in Indiana or ultimate penalty in Missouri may not be imposed, absent a jury determination that the State's evidence meets the statutorily required burden of proof.

The Supreme Court reached its result in *Bullington* based upon the procedures employed by Missouri. I am confident that the same result would be reached under Indiana's Habitual Offender statute if a defendant were convicted of a felony, acquitted of being an habitual offender, and successful in obtaining a new trial upon the charge of which he was convicted. The logic of *Bullington* applies with equal force to a case in which the state charges a new crime and, to support invocation of an enhanced penalty, seeks to employ identical prior felony convictions that were the determining factor (ultimate fact) in a prior habitual offender (enhanced penalty) pro-

---

**3.** The rule was recently reaffirmed in *Hudson v. Louisiana*, (1981) 450 U.S. 40, 42–44, 101 S.Ct. 970, 972, 67 L.Ed.2d 30, 33.

ceeding and resulted in a finding favorable to the defendant.

The cause should be remanded to the trial court with instructions to vacate the verdict upon the habitual offender count and to resentence the defendant.

DeBRULER, J., concurs.