The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

**David Lee ANDERSON,**
**Defendant-Appellant.**

No. 76–925.

Colorado Court of Appeals,
Div. II.

Aug. 30, 1979.

Rehearing Denied Nov. 1, 1979.

Certiorari Denied Jan. 14, 1980.

J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., William Morris, J. Stephen Phillips, Asst. Attys. Gen., Denver, for plaintiff-appellee.

Kordick & Wise, Lloyd C. Kordick, Colorado Springs, Nicholas J. Bourg, Colorado Springs, for defendant-appellant.

SMITH, Judge.

Defendant was convicted of bribing a witness and dispensing dangerous drugs. He was also adjudicated to be an habitual criminal. Defendant appeals the convictions, the adjudication, and the sentence. We affirm.

The prosecution's case consisted primarily of the testimony of one Phillip Freeman, who had been arrested for using drugs in violation of the terms of his probation. In return for this testimony, Freeman was granted immunity.

### I.

At trial, defense counsel attempted to cross-examine Freeman concerning certain testimony about defendant which Freeman had previously given before the grand jury. Counsel asked Freeman whether he had testified that defendant stole a Volkswagen, and whether such testimony was false. Freeman refused to answer, asserting his Fifth Amendment privilege. Defendant argues here that the court erred in not conducting an in camera hearing to ascertain if defense counsel had independent evidence concerning the questions asked. Defendant further argues that the prosecution should have been required to grant Freeman immunity from a possible perjury charge, so that he could be examined, or in the alternative, that the court should have stricken Freeman's testimony. We find no error.

At no time did defendant indicate that there was any independent evidence of Freeman's lying, and at no point did defendant request the "in camera" hearing which he now complains should have been conducted. The record reveals that defense counsel had interviewed the witness in detail before trial. Defendant could have requested an in camera hearing and could have made an offer of proof. Not having done so, defendant cannot place the blame on the People for the consequences he himself induced. *See People v. Shackelford,* 182 Colo. 48, 511 P.2d 19 (1973).

The effect of Freeman's assertion of the Fifth Amendment privilege here did not violate defendant's Sixth Amendment confrontation rights. The responsibility was on defendant to present independent evidence of Freeman's alleged perjury before the grand jury. The trial court was neither required to ask, nor expected to order, that Freeman be granted immunity in order to assist the defense in its cross-examination of him. We find no abuse of the trial court's discretion in handling this matter. *See People v. Williams,* Colo.App., 569 P.2d 339 (1977).

### II.

Defendant next argues that it was error for the trial court to deny his motion for a judgment of acquittal as to the charge of bribing a witness. Again, we disagree.

Freeman testified that defendant suggested to him that he could withhold his testimony and thereafter "do the time," in

which case defendant would set Freeman up to be "one of the top dealers in the state." Freeman also testified that defendant suggested that he could flee the jurisdiction and not testify and that defendant would pay the bondsman so that the bondsman would not be looking for Freeman. When viewed in its totality and in the light most supportive of the verdict reached, this testimony is sufficient to support the verdict of the jury convicting the defendant of bribery of a witness. *See People v. Pickett*, Colo., 571 P.2d 1078 (1977); and § 18–8–602(1), C.R.S.1973 (now in 1978 Repl.Vol. 8).

### III.

Defendant finally argues that a person once sentenced as an habitual offender cannot be again so sentenced until the first sentence is satisfied. Defendant, prior to trial of this matter, had been sentenced as an habitual offender, and the life sentence imposed by the trial court here was to be served concurrently with the life sentence the defendant was already serving. Defendant argues that the second habitual criminal adjudication which resulted in the imposition of a second life sentence, constitutes double jeopardy. We disagree.

Sections 16–13–101, et seq., C.R.S.1973 (1978 Repl.Vol. 8), define a class of offenders, the individual members of which are designated as "habitual" criminals, and provide specific punishments to be imposed upon those who incur that status upon their subsequent conviction of felony crimes. Under the statute a defendant convicted of a felony may receive a harsher penalty than that provided for the specific crime: If it is determined that he has been convicted of two previous felonies, having a maximum penalty of more than five years, he must be imprisoned for twenty-five to fifty years, or if it is determined that he has been convicted of any three previous felonies at any time, he must be imprisoned for life. Under such circumstances, these sentences supersede those which are statutorily mandated for specific crimes.

Because the habitual criminal statute does not create new or separate offenses, but rather defines statuses which mandate enhanced or different punishment, *Casias v. People*, 148 Colo. 544, 367 P.2d 327 (1961), the use of a prior conviction as a determinant of status does not constitute double jeopardy. It is the total number of felony convictions that determines what punishment will be imposed, not the specific offenses involved. Only the fact of the various convictions, and not the facts underlying those offenses, is determinative of a defendant's status. *See State v. Salazar*, 95 Idaho 650, 516 P.2d 707 (1973); and *Pearson v. State*, 521 S.W.2d 225 (Tenn. 1975).

The status then determines which penalty shall be imposed upon conviction of subsequent crimes. As long as the status of Anderson remains, and continues to be adjudicated, as that of an habitual offender with three prior felony convictions, a life sentence will be the appropriate sentence for each subsequent felony conviction regardless of the seriousness or classification of the specific offense.

The judgments of conviction, including the habitual criminal adjudication, and the sentence imposed are affirmed.

ENOCH, C. J., and PIERCE, J., concur.