468 S.E.2d 324

**STATE of West Virginia, Plaintiff Below, Appellee.**

v.

**Frederick SEARS, Jr., Defendant Below, Appellant.**

**No. 23049.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 9, 1996.

Decided Feb. 14, 1996.

---

Deborah L. McHenry, Managing Deputy Attorney General, Charleston, for Appellee.

Gail W. Kahle, Dickie, McCamey & Chilcote, Wheeling, for Appellant.

CLECKLEY, Justice:

The defendant below and appellant herein, Frederick Sears, Jr., was sentenced following a guilty plea to wanton endangerment involving a firearm. He now appeals the sentence entered against him. The defendant asserts the circuit court violated double jeopardy principles by applying the parole eligibility requirements of W.Va.Code, 62–12–13(a)(1)(A) (1988), when sentencing under the wanton endangerment involving a firearm statute contained in W.Va.Code, 61–7–12 (1994). Because the circuit court impermissibly enhanced the defendant's parole eligibility requirements, we remand for resentencing consistent with this opinion.

## I.

### FACTS AND PROCEDURAL HISTORY [1]

On December 7, 1994, the defendant was charged under a six-count indictment arising from an incident involving firing multiple gunshots in the downtown area of Wheeling, West Virginia, on September 9, 1994. The defendant was charged with the following offenses: Count I—malicious assault in violation of W.Va.Code, 61–2–9(a) (1978); Count II—carrying a deadly weapon in violation of W.Va.Code, 61–7–3(a) (1989); Counts III, IV, and V—wanton endangerment involving a firearm in violation of W.Va.Code, 61–7–12; and Count VI—unlawful shooting in violation of W.Va.Code, 61–2–11 (1923).

The defendant entered into a plea agreement with the State and pleaded guilty on April 24, 1995, to Count III of the indictment, which alleged the defendant committed the offense of wanton endangerment involving a firearm by "unlawfully, wantonly and

---

1. The facts are undisputed in this case.

feloniously" shooting a firearm at two people and thereby creating "a substantial risk of death or serious bodily injury." The State agreed to dismiss the remaining counts of the indictment as part of the plea agreement. In the "Notice of the Plea Agreement," the State recommended a three-year term of imprisonment at a correctional facility.

On May 1, 1995, the circuit court conducted a hearing where it gave the defendant an opportunity to withdraw his plea, explained possible sentencing options, and made a specific finding that the defendant used a firearm in the commission of his crime. The defendant declined to withdraw his plea and informed the court that he understood the sentencing possibilities. Defense counsel then questioned the applicability of W.Va. Code, 62–12–13(a)(1)(A). Under this statute, individuals found to have used a firearm in the commission of their crimes are ineligible for parole until three years or the full sentence has been completed, whichever is less. Defense counsel asserted this provision is a sentence enhancement and it was inappropriate to apply it in this case. The circuit court instructed defense counsel to brief the issue on or before May 10, 1995. A brief was submitted by defense counsel on May 9, 1995.

On May 12, 1995, the circuit court conducted a sentencing hearing. Counsel for the defendant and the State made statements concerning the applicability of W.Va.Code, 62–12–13(a)(1)(A). Without addressing the legal arguments, the circuit court stated: "Your motion to preclude application of sentencing enhancements in Chapter 61, Article 12, Section 13 is denied."[2] The circuit court then sentenced the defendant to five years in the penitentiary with parole eligibility in three years. The defendant appeals his sentence asserting that the application of W.

2. Presumably the circuit court meant the sentencing enhancement pursuant to W.Va.Code, 62–12–13.

3. The defendant also claims that: (1) principles of statutory interpretation require that in times of conflict a court will apply a specific statute (in this case, W.Va.Code, 61–7–12) over a general statute (in this case, W.Va.Code, 62–12–13), and

Va.Code, 62–12–13, violates double jeopardy principles.[3]

## II.

## DISCUSSION

This case presents an interesting twist on a familiar issue. In this appeal, we are called upon to address the effect the parole statute, W.Va.Code, 62–12–13, has on sentencing. W.Va.Code, 62–12–13(a)(1)(A), provides in pertinent part: "[I]n no case shall any person who committed, or attempted to commit a felony with the use, presentment or brandishing of a firearm, be eligible for parole prior to serving a minimum of three years of his or her sentence or the maximum sentence imposed by the court, whichever is less[.]"[4] The defendant questions the applicability of this Code section to the underlying conviction for wanton endangerment involving a firearm embodied in W.Va.Code, 61–7–12. Under this provision,

"[a]ny person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary for a definite term of years of not less than one year nor more than five years, or, in the discretion of the court, confined in the county jail for not more than one year, or fined not less than two hundred fifty dollars nor more than two thousand five hundred dollars, or both."

The defendant specifically contends that the use of the same firearm scenario to prove the principal charge of wanton endangerment with a firearm and also to increase the time required to be served before he is eligible for parole violates both State and federal prohibitions against double jeopardy.

(2) in case of an ambiguous statute, a court will construe the interpretation in favor of a defendant.

4. Parole regulations fall under W.Va.Code, 62–12–13, which generally provides, in part, that any prisoner in a penitentiary of this State must serve either the minimum term of an indeterminate sentence or one fourth of a· determinate sentence except when a firearm is used in the

We agree and hold that in the absence of clear evidence of legislative intent to the contrary, the parole enhancement statute is inapplicable to wanton endangerment involving a firearm.

## A.

### Standard of Review

█ Both the construction and scope of our parole statute and a double jeopardy claim are reviewed *de novo*. *See United States v. Gardner*, 65 F.3d 82, 85 (8th Cir. 1995), *cert. denied*, — U.S. —, 116 S.Ct. 748, 133 L.Ed.2d 696 (1996); *United States v. Jernigan*, 60 F.3d 562, 563 (9th Cir.1995). In order to establish a double jeopardy claim, a defendant must first present a *prima facie* claim that double jeopardy principles have been violated. Once the defendant proffers proof to support a nonfrivolous claim, the burden shifts to the State to show by a preponderance of the evidence that double jeopardy principles do not bar the imposition of the prosecution or punishment of the defendant. After reviewing the record, we hold the defendant has established a *prima facie* claim regarding the parole enhancement. Thus, we will consider the merits of his claim.

## B.

### Double Jeopardy Claim[5]

The Double Jeopardy Clause of the West Virginia Constitution provides, in part: "No person shall ... be twice put in jeopardy of life or liberty for the same offence." W.Va. Const. art. 3, § 5.[6] This clause historically has served the function of preventing both successive punishments and successive prosecutions and bars an accused from being twice punished for the same offense and from being twice tried for it. *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 306–07, 104 S.Ct. 1805, 1812, 80 L.Ed.2d 311, 323–24 (1984); *State v. Rummer*, 189 W. Va. 369, 432 S.E.2d 39 (1993); *State v. Hersman*, 161 W.Va. 371, 242 S.E.2d 559 (1978); *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977). Thus, it can be said that the Double Jeopardy Clause "prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917, 922 (1938), *abrogation on other grounds recognized by United States v. Sanchez–Escareno*, 950 F.2d 193 (5th Cir. 1991). Indeed, in *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 168, 21 L.Ed. 872, 876 (1874), the United States Supreme Court stated: "If there is anything settled in the jurisprudence of England and America, it is that no man [or woman] can be twice lawfully punished for the same offence."

█ Stating the rule against double jeopardy is a relatively simple proposition; discerning the proper judicial test for implementing the rule, however, is more difficult. One scholar suggests that the yardstick in determining whether there can be multiple punishments is a difficult and subtle question: "The test announced most often in cases is that offenses are separate if each requires proof of an additional fact that the other does not. This seems of little value as a test. The real question is one of legislative intent, to be ascertained from all the data available." 1 Charles A. Wright, *Federal Practice and Procedure* § 142 at 469, 476–78 (1982). (Footnote omitted). This observation is well supported by both West Virginia and federal cases. *See, e.g., State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992); *United States v. Halper*, 490 U.S. 435, 450, 109 S.Ct. 1892, 1902–03, 104 L.Ed.2d 487, 503 (1989);

---

commission of a felony. *See* note 19, *infra*, for text.

5. There may be some question as to whether the double jeopardy claim raised below is the same in scope as that raised on appeal. This issue need not detract us. The rule is clear that most double jeopardy claims arising from sentencing may be raised at any stage of a criminal proceeding and may properly be raised for the first time on appeal.

6. The Fifth Amendment to the United States Constitution is nearly identical: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life and limb." The scope of the Double Jeopardy Clause of the Fifth Amendment is at least coextensive with that of the Double Jeopardy Clause in the West Virginia Constitution. *State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39 (1979). We find it significant in this case that the West Virginia Constitution includes the word "liberty" as part of the double jeopardy protections.

*Garrett v. United States,* 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764, 771 (1985); *Ladner v. United States,* 358 U.S. 169, 172–75, 79 S.Ct. 209, 211–13, 3 L.Ed.2d 199, 202–04 (1958); *Bell v. United States,* 349 U.S. 81, 82–83, 75 S.Ct. 620, 621–22, 99 L.Ed. 905, 909–10 (1955). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, 542 (1983).[7] *See also United States v. Halper,* 490 U.S. at 450, 109 S.Ct. at 1903, 104 L.Ed.2d at 503. Stated another way, "[t]he purpose is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas,* 491 U.S. 376, 381, 109 S.Ct. 2522, 2525–26, 105 L.Ed.2d 322, 331 (1989).

■ The focal point of the double jeopardy protection against a second punishment is the "offense" for which the defendant is prosecuted and punished and not the conduct criminalized by or related to that offense.[8] Attempting to fit within the rubric, the defendant first argues that we should apply the rule of statutory construction announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).[9] The essential question of that test is "whether each provision requires proof of ... [an additional] fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. Under *Blockburger,* if two statutes contain identical elements of proof, the *presumption* is that double jeopardy principles have been violated unless there is a clear and definite statement of intent by the Legislature that cumulative punishment is permissible. In this case, the defendant argues the application of the parole enhancement statute is punitive in nature and to include this punitive enhancement over and above the maximum sentence allowable for the underlying crime for the same offense fails the *Blockburger* test. Thus, he contends the parole enhancement violates the double jeopardy prohibition "in the absence of a clear indication of contrary legislative intent." *Whalen v. United States,* 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715, 724 (1980).[10]

7. In *Hunter,* 459 U.S. at 367, 103 S.Ct. at 678–79, 74 L.Ed.2d at 543, the Supreme Court provided that "cumulative punishment can presumptively be assessed after conviction for two offenses that are not the 'same' under *Blockburger* [*v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)]."

8. Despite the traditional focus of the multiple prosecutions' bar and the multiple punishments' bar on the "offence" (the word specifically used in the United States Constitution), a short-lived opinion by the United States Supreme Court shifted the focal point of the multiple prosecutions' bar from the offense to the conduct underlying the offense. In *Grady v. Corbin,* 495 U.S. 508, 510, 110 S.Ct. 2084, 2087, 109 L.Ed.2d 548, 557 (1990), *overruled by United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the Supreme Court imposed an additional conduct test on the *Blockburger* same-elements test for determining if a second prosecution was barred. The conduct emphasis did not last long, however, as the Supreme Court recently and forcefully rejected the *Grady* "same conduct" test in *Dixon,* 509 U.S. at 703–04, 113 S.Ct. at 2860, 125 L.Ed.2d at 573. Thus, instead of achieving consistency in double jeopardy analyses by pivoting the focus of the multiple punishments' bar toward the *Grady* "same conduct" test, the Supreme Court reasserted that the focus of multiple

prosecutions' bar is the "same offense" as defined by *Blockburger.* 509 U.S. at 703–04, 113 S.Ct. at 2860, 125 L.Ed.2d at 573. Justice Scalia stated for a bare majority of the *Dixon* Court:

"We have often noted that the [Double Jeopardy] Clause serves the function of preventing both successive punishment and successive prosecution, ... but there is no authority, except *Grady,* for the proposition that it has different meanings in the two contexts. That is perhaps because it is embarrassing to assert that the single term 'same offence' (the words of the Fifth Amendment at issue here) has two different meanings—that what *is* the same offense is yet *not* the same offense." 509 U.S. at 703–04, 113 S.Ct. at 2860, 125 L.Ed.2d at 573. (Emphasis in original; citation omitted).

9. *Partial modification recognized by United States v. Liller,* 999 F.2d 61 (2nd Cir.1993).

10. In *Whalen,* the Supreme Court stated:

"The Fifth Amendment guarantee against double jeopardy embodies in this respect simply one aspect of the basic principle that within our federal constitutional framework the legislative power, including the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty

Although we have not yet addressed the double jeopardy implications of W.Va.Code, 62–12–13, the State argues the defendant's double jeopardy argument is fundamentally flawed because to apply *Blockburger* at this juncture would put the cart before the horse. According to the State, *Blockburger* applies only when the defendant has been put in jeopardy and then only when legislative intent is unclear. We believe it is necessary to address these arguments.[11]

It is axiomatic that "an accused must suffer jeopardy before he can suffer double jeopardy." *Serfass v. United States,* 420 U.S. 377, 393, 95 S.Ct. 1055, 1065, 43 L.Ed.2d 265, 277 (1975). The strength of any double jeopardy claim is whether the defendant is facing multiple punishments for the same course of conduct. *See Thomas v. C.I.R.,* 62 F.3d 97, 100 (4th Cir.1995), *citing United States v. Morgan,* 51 F.3d 1105, 1108 (2nd Cir.1995) (noting that the key word to be understood in an appeal brought under the Double Jeopardy Clause is "punishment"). Essentially, the State contends the parole enhancement was not a separate punishment and, for that reason alone, double jeopardy is not implicated. The first part of this statement need not detain us long. The cases cited above illustrate another point as well: The issue of double jeopardy can arise in a wide variety of contexts. The United States Supreme Court's decision in *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), informs our analysis.

■ The question raised in *Kurth Ranch* was whether a state tax on the possession of illegal drugs following the imposition of a criminal penalty for the same conduct violated the Double Jeopardy Clause. The Supreme Court emphasized the tax was remarkably high, had a deterrent purpose, and was conditioned on the commission of a crime. The Supreme Court stated: "Taken as a whole, this drug tax is a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." —— U.S. at ——, 114 S.Ct. at 1948, 128 L.Ed.2d at 781. Our reading of this case and the earlier decision of *Austin v. United States,* 509 U.S. 602, 617–18, 113 S.Ct. 2801, 2810–12, 125 L.Ed.2d 488, 503–06 (1993), indicates that to determine if a particular statutory sanction constitutes punishment, courts are directed to consider: (1) whether the statute serves solely a remedial purpose or serves to punish and deter criminal conduct, and (2) whether the Legislature tied the sanction to the commission of specific offenses. Undoubtedly, the parole enhancement, which is designed to punish and deter criminal conduct, is punitive in nature and, therefore, we are convinced the Legislature did not consider W.Va.Code, 62–12–13, to serve solely a remedial purpose.

More convincingly, this Court in *Conner v. Griffith* suggested that "[t]he question of whether the failure to credit time served on parole violates our constitutional prohibition against double jeopardy can best be answered by analyzing the nature of parole." 160 W.Va. at 683, 238 S.E.2d at 530.[12] After

---

of them, resides wholly with the Congress." 445 U.S. at 689, 100 S.Ct. at 1436, 63 L.Ed.2d at 722.

**11.** Despite identical elements in the two statutes, the State maintains there is no double jeopardy problem. The State asserts the defendant "has not been subjected to multiple punishment[s]. Rather, ... [the defendant] has been sentenced only once for a single offense." The State attacks the defendant's argument on two grounds: First, the parole statute is a matter of "legislative grace" as opposed to punishment; and, second, the parole statute falls within the category of permissible sentence enhancement-type statutes.

**12.** Although *Conner* dealt with a different issue, it still is instructive. *Conner* concerned the failure of the parole board to give a defendant credit for

time served on parole prior to parole revocation. In *Conner,* we acknowledged that lengthening the time served as a result of parole regulations amounts to a violation of the Double Jeopardy Clause and parole restrictions can equal punishment under certain circumstances. Theoretically, in *Conner,* we could have found that because parole is a matter of "legislative grace," any violation of parole would require the parolee to complete his or her sentence from the date he or she was originally released with no credit for time served on parole. Instead, we rejected this notion and held that an extension to the length of a sentence is impermissible. Similarly, in the instant case, the restriction of parole eligibility definitely lengthens the amount of time the defendant will have to stay in prison before he even may be considered for parole.

finding that parole involves a valuable privilege worthy of constitutional protection, the Court in Syllabus Point 2 states: "The failure to credit on the underlying sentence the time served on parole prior to the revocation of parole constitutes a multiple punishment for the same offense, and is a violation of the Double Jeopardy Clause of the *West Virginia Constitution,* Article III, Section 5." Based on the reasoning contained in *Conner,* the current law in West Virginia equates at least some parole issues with "punishment" for double jeopardy purposes.[13] Thus, this Court already has decided that parole matters are within the purview of the Double Jeopardy Clause, and we discern no reason to disregard this persuasive authority in the context of this case.

In light of the well-established principle that the Legislature may intentionally prescribe multiple punishments for the same conduct, our task is to determine whether the Legislature manifested such an intent for the two statutory provisions under which the defendant was sentenced.[14] It appears to be the State's position that even if we were to apply the *Blockburger* test to W.Va.Code, 62–12–13, we would find no double jeopardy problem. If the relevant statutes on their face indicate a clear legislative intent to allow multiple punishments, we need not engage in a *Blockburger* analysis because we must give effect to that legislative intent.[15] *See Garrett,* 471 U.S. at 779, 105 S.Ct. at 2411, 85 L.Ed.2d at 771–72. In this regard, the State suggests the clear indication of the Legislature in enacting W.Va.Code, 62–12–13, is that its penalty is to apply in addition to the punishment provided for the underlying crime in which the firearm is used. If this is so, the State is correct in its assertion that this legislative intent eliminates any *Blockburger* problem.

By enacting W.Va.Code, 62–12–13, and W.Va.Code, 61–7–12, there can be no doubt that the Legislature was directing its attention to the increasing problem of the illegal use of firearms. The intent is clear that the Legislature wanted to assure lengthy prison sentences for gun-toting offenders and the offense committed in this case is precisely the type of dangerous offense for which a lengthy prison sentence is most appropriate. The narrow question we must answer is whether the Legislature also intended to stack the parole enhancement with the underlying firearm conviction sentence.

According to the State, W.Va.Code, 62–12–13(a)(1)(A) functions like a sentencing enhancement statute and, as such, does not operate as a second punishment. There are significant differences between the instant case and those upholding other sentencing

---

**13.** The State is correct that parole is essentially a matter of "legislative grace." *See State v. Lindsey,* 160 W.Va. 284, 291, 233 S.E.2d 734, 738–39 (1977) ("[o]ne convicted of a crime and sentenced to the penitentiary is never *entitled* to parole." (Emphasis in original)). However, it is this aspect of parole that was downplayed by the Court in *Conner.* Because parole is a means of shortening a sentence, the restriction thereof necessarily operates as a form of punishment.

**14.** In Syllabus Points 3 and 4 of *State v. Rummer, supra* we found:

"3. 'A claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment.' Syllabus Point 7, *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992).

"4. 'In ascertaining legislative intent, a court should look initially at the language of the involved statutes and, if necessary, legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no

such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether each offense requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses.' Syllabus Point 8, *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992)."

*See also* Syl. pt. 4, *State v. Sayre,* 183 W.Va. 376, 395 S.E.2d 799 (1990); Syl. pt. 8, *State v. Zaccagnini,* 172 W.Va. 491, 308 S.E.2d 131 (1983).

**15.** Case law makes it clear that "where a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger,* a court's task of statutory construction is at an end ... and the trial court ... [may] impose cumulative punishment under such statutes in a single trial." 2 Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* at II-186 (1993).

enhancement statutes.[16] In jurisdictions upholding sentencing enhancements where legislative intent is not explicit, courts follow three different lines of analysis to justify their holdings: (1) the proof of differing elements constitute two offenses under *Blockburger v. United States, supra;* (2) evidence of prior criminal acts by a defendant justify the sentencing enhancement; or (3) a finding that instead of creating multiple punishments in violation of double jeopardy protections, the sentencing enhancement statutes merely limit the sentencing discretion of a court or a parole board.[17]

We find some guidance for the appropriate resolution of this case in the recent decision of *Witte v. United States,* —— U.S. ——, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995). The issue presented in *Witte* was "whether a court violates ... [the Double Jeopardy Clause] by convicting and sentencing a defendant for a crime when the conduct underlying the crime has been considered in determining the defendant's sentence for a previous conviction." —— U.S. at ——, 115 S.Ct. at 2202, 132 L.Ed.2d at 359.

In *Witte,* the defendant was originally convicted and sentenced for marijuana dealing. In sentencing him for this offense, the district court took into consideration "other relevant conduct," which included the defendant's cocaine dealing, and departed upward. The resultant sentencing range was higher than it would have been if only the drugs involved in the conviction had been considered, but the sentence was still within the range authorized by the statute for the crime. The defendant was subsequently indicted for his cocaine dealing, the same conduct which formed the basis for the upward departure on the sentence for the marijuana conviction. The defendant argued that his prosecution and punishment for cocaine dealing would violate double jeopardy principles. The Supreme Court rejected this argument holding that "where the legislature has authorized such a particular punishment range for a given crime, the resulting sentence within that range constitutes punishment only for the offense of conviction[.]" —— U.S. at ——, 115 S.Ct. at 2207, 132 L.Ed.2d at 366. Thus, the prosecution for cocaine dealing would not be a serious attempt to punish the defendant for the same crime.[18]

---

**16.** Generally, recidivist statutes seek to punish for the commission of a crime by repeat offenders. It is the repeat nature of the criminal's history that justifies the enhancement of the punishment. These same considerations do not exist in this case. Here, there is no prior bad act or offense to justify stiffening the penalty. Only the underlying crime for which the defendant stands convicted is being considered. W.Va.Code, 62–12–13(a)(1)(A), does not require the proof of any other aggravating element above and beyond that which was necessary to convict the defendant for wanton endangerment involving a firearm.

**17.** Jurisdictions upholding these statutes find there is no double jeopardy violation because no substantive offense has been implicated and the enhancement is justified because " 'the repetition of criminal conduct aggravates [the defendant's] ... guilt and justifies heavier penalties when he is again convicted,' " *United States v. Wallace,* 889 F.2d 580, 584 (5th Cir.1989), *quoting United States v. Bowdach,* 561 F.2d 1160, 1175 (5th Cir.1977). This Court also upheld a recidivist statute in *Gibson v. Legursky,* 187 W.Va. 51, 415 S.E.2d 457 (1992). In *Gibson,* we justified our holding by stating:

> " 'Because the habitual criminal statute does not create new or separate offenses, but rather defines statutes which mandate enhanced or different punishment, ... the use of a prior conviction as a determinant of status does not

constitute double jeopardy. It is the total number of felony convictions that determines what punishment will be imposed, not the specific offenses involved. Only the fact of the various convictions, and not the facts underlying those offenses, is determinative of a defendant's status.' " 187 W.Va. at 53, 415 S.E.2d at 459, *quoting People v. Anderson,* 43 Colo. App. 178, 181, 605 P.2d 60, 62 (1979). (Citations omitted).

*See also State ex rel. McMannis v. Mohn,* 163 W.Va. 129, 254 S.E.2d 805 (1979), *cert. denied,* 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983). Despite the various justifications given to support recidivist statutes, only one justification for the enhancement need be given and that is the enhancement was unambiguously authorized by the Legislature. *See* 2 Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* at II–13 (1995 Supp.) ("[a]lthough the bar on double jeopardy restrains the executive and judicial branches, it leaves the legislature basically untouched"). It is axiomatic that the Legislature may within broad limits decide the penalty for each case.

**18.** The Federal Sentencing Guidelines further protect against "double counting" by providing for concurrent sentences if, as in the *Witte* case, a defendant is found guilty of the cocaine charge, because it was previously taken into account as "relevant conduct" in a marijuana case.

Although *Witte* is not controlling in this case, we can glean helpful suggestions from the Supreme Court's analysis. First, the rationale given by the Supreme Court was that, as in the case of repeat offender statutes, sentencing enhancement statutes for prior criminal convictions do not create multiple punishments for the same offense when unadjudicated criminal conduct is taken into account in sentencing for conviction of a different offense. Specifically, the Supreme Court stated:

"*Williams* [*v. Oklahoma*, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959) ], like this case, concerned the double jeopardy implications of taking the circumstances surrounding a particular course of criminal activity into account in sentencing for a conviction arising therefrom. *Similarly, we have made clear in other cases, which involved a defendant's background more generally and not conduct arising out of the same criminal transaction as the offense of which the defendant was convicted, that '[e]nhancement statutes, while in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes which are commonplace in state criminal laws, do not change the penalties imposed for the earlier conviction.' Nichols* [*v. United States*, 511 U.S. 738, ——, 114 S.Ct. 1921, 1927, 128 L.Ed.2d 745, 754 (1994) ] ... (approving consideration of a defendant's previous uncounseled misdemeanor conviction in sentencing him for a subsequent offense). *In repeatedly upholding such recidivism statutes, we have rejected double jeopardy challenges because the enhanced punishment imposed for the later offense 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,' but instead as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.' " Gryger v. Burke*, 334 U.S. 728, 732, 68 S.Ct. 1256[, 1258], 92 L.Ed. 1683[, 1687] (1948)." *Witte v. United States*, —— U.S. at ——, 115 S.Ct. at 2206, 132 L.Ed.2d at 364. (Emphasis added).

The essence of *Witte* is that "[b]ecause consideration of relevant conduct in determining a defendant's sentence *within the legislatively authorized punishment range* does not constitute punishment for that conduct, the instant prosecution does not violate the Double Jeopardy Clause's prohibition against the imposition of multiple punishments for the same offense." —— U.S. at ——, 115 S.Ct. at 2209, 132 L.Ed.2d at 368. The determinative factor is that Congress expressly stated what relevant factors are to be considered for sentencing purposes. Therefore, *Witte* is consistent with other cases that suggest the purpose of the Double Jeopardy Clause is to ensure that sentencing courts do not exceed, by the device of multiple punishments, what the Legislature intended. In other words, double jeopardy precludes the multiple use of the same facts to prove a predicate offense and then to use the same facts and offense as a punitive device to enhance the parole eligibility date where there is an absence of any showing that the legislature intended to permit such double usage. In *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275, 285 (1981), the United States Supreme Court placed the matter in proper context:

"[T]he question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where ... the [Legislature] intended ... to impose multiple punishments, imposition of such sentences does not violate ... [double jeopardy]."

To be clear, we must defer to legislative determination of whether a specific course of conduct can be punished both as an underlying conviction and as a parole enhancement. *See generally Sanabria v. United States*, 437 U.S. 54, 70, 98 S.Ct. 2170, 2182, 57 L.Ed.2d 43, 57 (1978).

Thus, the question is whether the Legislature unambiguously intended the parole enhancement from W.Va.Code, 62–12–13, to apply if a person is convicted and sentenced under W.Va.Code, 61–7–12. There is nothing in either statute that clearly indicates the Legislature's intent concerning the wanton endangerment involving a firearm statute and the parole restrictions. Although there

is a presumption that "the legislature, when it enacts legislation, is familiar with its prior enactments," it is probable that in this case the legislature did not consider the interrelationship of these two statutes. *State ex rel. Foster v. City of Morgantown*, 189 W.Va. 433, 436, 432 S.E.2d 195, 198 (1993). *See also State ex rel. Smith v. Maynard*, 193 W.Va. 1, 8–9, 454 S.E.2d 46, 53–54 (1994). What is apparent is that not every violation involving a firearm is to be treated the same under the parole statute. Later sections of the statute provide for different restrictions for some crimes.[19]

The Legislature in fixing the penalty for the underlying offense has already taken into consideration the defendant's use of a firearm.[20] There is an obvious conflict between these two statutes because anyone convicted of the firearm offense is by definition brought within the parole enhancement statute. In our judgment, to apply the parole enhancement statute merely based upon the defendant's firearm conviction would have the practical effect of nullifying the penalty provisions of the firearm statute.

■■■ Furthermore, to the extent that the statute can be considered ambiguous, the rule of lenity requires us to resolve that ambiguity in favor of the defendant. This merely means that when the Legislature fails to indicate the allowable unit of prosecution and sentence with clarity, doubt as to legislative intent should be resolved in favor of lenity for the accused.[21] We hold that a prior conviction which is used as the predi-

19. · W.Va.Code, 62–12–13, states, in part:

"Any prisoner of a penitentiary of this state, to be eligible for parole:

"(1)(A) Shall have served the minimum term of his or her indeterminate sentence, or shall have served one fourth of his or her definite term sentence, as the case may be, except that in no case shall any person who committed, or attempted to commit a felony with the use, presentment or brandishing of a firearm, be eligible for parole prior to serving a minimum of three years of his or her sentence or the maximum sentence imposed by the court, whichever is less: *Provided, That any person who committed, or attempted to commit, any violation of section twelve [§ 61–2–12], article two, chapter sixty-one of this code, with the use, presentment or brandishing of a firearm, shall not be eligible for parole prior to serving a minimum of five years of his or her sentence or one third of his or her definite term sentence, whichever shall be the greater. Nothing in this section shall apply to an accessory before the fact or a principal in the second degree who has been convicted as if he or she were a principal in the first degree if, in the commission of or in the attempted commission of the felony, only the principal in the first degree used, presented or brandished a firearm.* No person is ineligible for parole under the provisions of this subdivision because of the commission or attempted commission of a felony with the use, presentment or brandishing of a firearm unless such fact is clearly stated and included in the indictment or presentment by which such person was charged and was either (i) found by the court at the time of trial upon a plea of guilty or nolo contendere, or (ii) found by the jury, upon submitting to such jury a special interrogatory for such purpose if the matter was tried before a jury, or (iii) found by the court, if the matter was tried by the court without a jury." (Emphasis added).

20. The Legislature already has recognized the seriousness of the misuse of a firearm by making the use of a firearm in a certain manner a criminal act under the wanton endangerment involving a firearm statute. This statute already acknowledges the "added element of danger" a firearm presents by making the existence of a firearm to commit the crime a necessary element. It is unclear from either statute whether the Legislature intended to stack the parole restrictions on top of the wanton endangerment involving a firearm penalties.

21. Because legislative intent is unclear we are compelled to apply the rule of lenity. Under this rule "[i]n the area of double punishments, doubts are to be resolved in favor of the defendant" in order to avoid double jeopardy problems. 2 Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* at II–194. *See also, United States v. Barrington*, 662 F.2d 1046 (4th Cir. 1981). The United States Supreme Court in *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205, 211 (1980), *superseded by statute as stated in United States v. Wessels*, 12 F.3d 746 (8th Cir.1993), described the rule of lenity as "the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what … [the Legislature] intended.'" (Citation omitted). In this case, because there is the possibility of double counting that is not intended by the Legislature, we are compelled to follow the Supreme Court and other jurisdictions and apply the rule of lenity. We find this is a reasonable course to take when such substantial interests are at stake. The judiciary should be hesitant to impose such restrictions when it is not clear this is the Legislature's unequivocal desire.

cate to establish the crime of wanton endangerment with a firearm cannot be used to enhance the defendant's punishment under the parole statute in the absence of explicit legislative authority. To rule otherwise would undermine the purpose of the sentencing provision of W.Va.Code, 61–7–12, and introduce the probabilities for sentencing inconsistent with legislative intent.

The crucial difference between this case and the cases relied on by the State is founded in our analysis of legislative intent. If the West Virginia Legislature intended to allow the same firearm conviction to serve as the basis for a separate prosecution and to be used to enhance parole, the Double Jeopardy Clause does not stand in its way. However, we are left to guess as to whether the Legislature intended to consolidate punishment under these two statutes. Absent evidence to the contrary, it is presumed the Legislature did not intend to punish the same offense under two statutes. *See Ball v. United States,* 470 U.S. 856, 861, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740, 745–46 (1985).

Of course, once the Legislature clearly indicates its intention regarding the parole enhancement, it need not reiterate that intent in any subsequent statutes that fall within the previously defined class. Otherwise, the Legislature would have to repeat itself restating in each subsequent enactment an intention the Legislature thought it had expressed once already. Today's decision does not require such a convoluted approach to lawmaking.

### III.

### CONCLUSION

For the foregoing reasons, we remand this case with instruction to the Circuit Court of Ohio County for proceedings consistent with this opinion.

Remanded with instructions.