# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-1026** (Putnam County 09-F-3)

**Edward B.,**
**Defendant Below, Petitioner**

**FILED**
**December 7, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Edward B., by counsel David L. Hill and Mark A. Barney, appeals the Circuit Court of Putnam County's October 10, 2019, sentencing order placing him on supervised release for ten years following his violation of the terms and conditions of his earlier-imposed supervised release.[1] Respondent State of West Virginia, by counsel Gordon L. Mowen II, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted in July of 2008 on two counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust to a child and one count of second-degree sexual assault (Case No. 08-F-49). Petitioner and the State entered into plea negotiations, the outcome of which required petitioner to plead guilty to third-degree sexual assault, charged by information (Case No. 09-F-3), in exchange for the dismissal of the indictment filed in Case No. 08-F-49. In accordance with this agreement, petitioner was charged by information on February 3, 2009, with one count of third-degree sexual assault. The information alleged that petitioner "engage[d] in sexual intrusion with K.P. who is less than sixteen years old and more than four years younger than" petitioner. On June 24, 2009, petitioner was sentenced to not less than one nor more than five years of incarceration and ordered to serve a period of supervised release of fifty years, upon his release from incarceration.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

Following petitioner's release from incarceration on February 7, 2012, he began serving his term of supervised release. In the eight-plus years since petitioner's placement on supervised release, his supervised release was revoked on four separate occasions; the fourth revocation proceeding gives rise to petitioner's instant appeal. Although most of the events that transpired during the three prior revocation proceedings are not relevant to petitioner's arguments regarding the fourth revocation, noteworthy occurrences include the reduction of petitioner's fifty-year term of supervised release to a ten-year term after the first revocation. And, during the proceedings on the second revocation, petitioner unsuccessfully moved to dismiss the revocation petition on the ground that, in light of his completion of the underlying prison sentence for the conviction giving rise to his supervised release, any further incarceration for violating the terms of his supervised release would violate the double jeopardy clause.[2]

The State filed the revocation petition that is the subject of this appeal on July 24, 2019. The State alleged that petitioner was in violation of the terms of his supervised release due to his arrest for various driving offenses. Petitioner was also alleged to have admitted to consuming two alcoholic beverages when questioned by the arresting officer.

Petitioner moved to dismiss the revocation petition on August 5, 2019. Although the appendix includes the motion to dismiss petitioner filed during the proceedings related to his second revocation, petitioner did not include his August 5, 2019, motion to dismiss. But in arguing his motion when the parties appeared for the revocation hearing on September 12, 2019, petitioner stated that he had already completed the underlying sentence, and he claimed that additional punishment for "these little incidents" amounted to a violation of double jeopardy principles and deprived him of equal protection of the law. In sum, petitioner stated that what he was

> asking [the court] to do . . . is just to dismiss this additional probation, or parole, or whatever it is; post completion of his sentence. And that's why we recommend this thing be dismissed, so he can go on with his life, or if he goes out and drives or drinks or gets in trouble, you know, he's on his own and he can serve his time the same as other citizens.

Thus, based on the argument made at the hearing, it appears that petitioner's August 5, 2019, motion to dismiss was substantively identical to the motion to dismiss he filed during the proceedings on his second revocation. Petitioner did not assert any purported right to a jury trial.

The court denied petitioner's motion to dismiss the petition. After denying the motion, the court began a lengthy exposition on supervised release, which included informing petitioner of "a United States Supreme Court case that came down—I'm getting old, four or five months ago. Okay? Maybe three months ago. I don't know. . . . [A]nd it was setting some of these—these penalty phases to be unconstitutional"; suggesting that "there is a [Sixth] Amendment question

---

[2] Article III, Section 5 of the West Virginia Constitution provides, in part, that "[n]o person shall . . . be twice put in jeopardy of life or liberty for the same offence." This clause prevents "both successive punishments and successive prosecutions and bars an accused from being twice punished for the same offense and from being twice tried for it." *State v. Sears*, 196 W. Va. 71, 75, 468 S.E.2d 324, 328 (1996) (citation omitted).

here, okay, of whether or not these extra penalty phases required trials"; and discussing the propriety of revocations that result in the imposition of a lengthy prison term:

> So you are on the cusp of the beginning of an area of law on these issues. Many states have reached into this idea, because with certain offenders, even though society says the penalty is one thing, there is a risk and an enhanced risk to the general public, perhaps for the rest of their life because they were able to—at one point in their life say a [twelve] year old is okay. And, you know, the science backs that up, but I don't know if the constitution backs that up about whether or not we can have a life sentence for, you know, a crime that the State deems to be a [one] to [five] or a [two] to [ten]. Okay?

Petitioner indicated he understood, and the court continued: "But nonetheless, I—to perfect that issue, as if there was an appeal possible on that case, would require denial of your motion."

After providing this explanation, the court asked petitioner whether he wanted "to admit to his conduct or . . . [wanted] a hearing." Petitioner elected to admit to certain alleged conduct, namely driving while his license was revoked. The court asked, "And you're willing to admit to me today that you did undertake that conduct?" Petitioner responded, "Yes, sir." The court then informed petitioner of his

> right to have a hearing where the State has to put on evidence to prove to me to the satisfaction under the law of the State of West Virginia that you violated your term of supervised release [n]umber 1. Do you understand? And you want to waive your right to be heard on that then?

Petitioner again responded, "Yes, sir." Accordingly, the court asked, "With regard then to [p]aragraph 1 of the revocation filed herein, . . . do you so admit freely and voluntarily, [petitioner]?" Petitioner said, "Yes, sir." The court accepted petitioner's admission and revoked his supervised release.

The parties appeared for disposition on October 10, 2019. At this time, petitioner "call[ed] the [c]ourt's attention to" *United States v. Haymond*, 139 S. Ct. 2369 (2019) (plurality opinion).[3] Even though he had already admitted to violating a term of his supervised release and had waived his right to be heard, petitioner argued that, under that decision, he could not serve any additional time without a jury determination that he had violated the terms of his supervised release. The court determined that *Haymond* was inapposite and reinstated petitioner's ten-year period of supervised release. It is from the court's sentencing order entered on this same day that petitioner appeals.

---

[3] In *Haymond*, the Supreme Court found 18 U.S.C. § 3583(k)—part of the Sentencing Reform Act of 1984 that mandated imposition of a minimum term of incarceration upon judicial factfinding of certain violations of supervised release—to be violative of the right to a jury trial guaranteed by the Fifth and Sixth Amendments to the United States Constitution. 139 S.Ct. at 2384-85.

Petitioner raises two assignments of error on appeal, both of which concern the circuit court's denial of a jury trial in his revocation proceeding. In his first assignment of error, petitioner argues that the denial of a jury trial violated the Fifth and Sixth Amendments to the United States Constitution, as addressed in *Haymond*. In his second assignment of error, petitioner argues that the denial of a jury trial violated Article III, Sections 1, 10, and 14 of the West Virginia Constitution.[4]

As detailed above, petitioner had already admitted to violating the terms of his supervised release and had waived his right to be heard before claiming a jury trial right.

> Our cases consistently have demonstrated that, in general, the law ministers to the vigilant, not to those who sleep on their rights. . . . When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time.

*State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996). We have repeatedly warned that the failure to timely assert a right will likely result "in the imposition of a procedural bar to an appeal of that issue." *Id.* (quoting *State v. Miller*, 194 W. Va. 3, 17, 459 S.E.2d 114, 128 (1995)). It cannot be said that petitioner's "bringing to the circuit court's attention" the *Haymond* decision nearly a month after his admission to violating the terms of his supervised release and waiving his right to be heard amounts to the timely assertion of this claimed right. As a result, petitioner has

---

[4] Article III, Section 1 of the West Virginia Constitution provides that

> [a]ll men are, by nature, equally free and independent, and have certain inherent rights, of which, when they enter into a state of society, they cannot, by any compact, deprive or divest their posterity, namely: The enjoyment of life and liberty, with the means of acquiring and possessing property, and of pursuing and obtaining happiness and safety.

Section 10 states that "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." And Section 14 requires that

> [t]rials of crimes, and of misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offence was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county. In all such trials, the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witnesses against him, and shall have the assistance of counsel, and a reasonable time to prepare for his defence; and there shall be awarded to him compulsory process for obtaining witnesses in his favor.

not preserved the issue of a jury trial right, whether arising under *Haymond* or the West Virginia Constitution, for appeal.[5]

Petitioner, however, also urges consideration of this issue under the plain error doctrine. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings," *Miller*, 194 W. Va. at 7, 459 S.E.2d at 118, syl. pt. 7, and for an error to be "plain," it "must be 'clear' or 'obvious.'" *Id.*, syl. pt. 8, in part. The *Haymond* plurality "emphasized" that its decision did not address all supervised release proceedings but, rather, was "limited to § 3583(k)—an unusual provision enacted little more than a decade ago—and the *Alleyne* [*v. United States*, 570 U.S. 99 (2013),] problem raised by its 5-year mandatory minimum term of imprisonment." *Haymond*, 139 S. Ct. at 2383. West Virginia Code § 62-12-26, the supervised release statute under which petitioner's supervised release was revoked, was not addressed in *Haymond* nor is it similar to § 3583(k). Most notably, West Virginia Code § 62-12-26 does not require imposition of a minimum term of incarceration "triggered by judge-found facts," which the *Haymond* plurality found problematic. 139 S. Ct. at 2383-84. Thus, petitioner has failed to demonstrate any error under *Haymond*, let alone one that is clear or obvious.

Petitioner's arguments concerning a jury trial right arising under the West Virginia Constitution fare no better. In syllabus point 9 of *State v. James*, we held that

> West Virginia Code § 62-12-26 does not facially violate due process principles of the Fourteenth Amendment to the Constitution of the United States or Article III, Section 10 of the Constitution of West Virginia. *The terms of the statute neither infringe upon a criminal defendant's right to jury determination of relevant factual matters*, nor are the provisions of the statute regarding conditions of supervised release unconstitutionally vague.

227 W. Va. 407, 710 S.E.2d 98 (2011) (emphasis added). Accordingly, the court's denial of a jury trial was not plainly erroneous under the West Virginia Constitution.

For the foregoing reasons, we affirm.

Affirmed.

---

[5] Petitioner claims that he did preserve this error by filing a motion to dismiss the revocation petition. To support this assertion, he points to the circuit court's docket sheet and the court's statement that a Sixth Amendment issue was present. The docket sheet reflects only the filing of a motion to dismiss, however, not the substance of it. As set forth above, petitioner made no claim of a jury trial right when he argued his motion at the September 12, 2019, revocation hearing. In the court's discussion of supervised release generally, it made note of a potential Sixth Amendment issue, but at no point before admitting to violating his supervised release and waiving his right to be heard on the issue did petitioner argue for or request a jury trial.

**ISSUED:**  December 7, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

6